NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0607n.06

No. 11-3152

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 12, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **CHRISTOPHER ROGERS**, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| *Petitioner-Appellant*, | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| v. | ) | OHIO |
| | ) | |
| **PHILLIP KERNS**, Warden, | ) | **O P I N I O N** |
| | ) | |
| *Respondent-Appellee.* | ) | |

BEFORE:  DAUGHTREY and CLAY, Circuit Judges; and CLELAND, District Judge.[*]

**CLELAND, District Judge.**  Petitioner Christopher Rogers, an Ohio prisoner, is currently serving a life sentence for aggravated murder.  He appeals the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254 on two grounds: (1) a violation of his confrontation rights under the Sixth and Fourteenth Amendments; and (2) a violation of his right to the assistance of counsel during a custodial interrogation under *Miranda v. Arizona*, 384 U.S. 436 (1966).  We unanimously agree that the facts and legal arguments have been adequately presented in the briefs, making oral argument unnecessary.  *See* Fed. R. App. P. 34(a)(2)(C); 6th Cir. R. 34(j)(2)(C).  Because the state court's adjudication of these claims is entitled to deference under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we **AFFIRM** the district court's denial of the writ.

---

[*]The Honorable Robert H. Cleland, United States District Court for the Eastern District of Michigan, sitting by designation.

**I.**

On May 12, 2004, a jury in the Fayette County Court of Common Pleas convicted Rogers of aggravated murder and tampering with evidence, based upon events surrounding the shooting death of Nathan Soward. The evidence at trial showed that on the night of January 17, 2003, Rogers, Soward, and some others were gathered at Rogers's apartment for a party. During the party, Rogers was overheard on a telephone call saying "[i]t's gonna go down like at 2:00 o'clock tonight" and "it was gonna[] go down like Tupac, tonight"—the latter comment being a reference to a well-known entertainer who was killed in a gang-related shooting while riding in a car. In the early hours of the following morning, Rogers agreed to give Soward a ride home, and he, Soward, and another friend, a minor identified as J.Y., left in Rogers's truck.

J.Y. and Rogers gave conflicting testimony as to what happened next. J.Y. attested that, because Rogers was intoxicated, he agreed to drive. While en route, he suddenly heard two gun shots and saw Soward slump over. J.Y. immediately pulled over, got out of the truck, and climbed into the truck bed. Rogers then drove a short distance before stopping along an isolated road. After a few minutes, J.Y. returned to the cab of the truck and discovered that Soward's body had been removed. Rogers's testimony recounted the same general series of events, but he claimed that he had been driving when Soward was shot by J.Y., who then drove on to a remote area and asked Rogers to help him move the body.

To support the theory that J.Y. was the shooter, defense counsel attempted to cross-examine J.Y. about his alleged history of burglarizing houses and stealing guns. Defense counsel asked J.Y. whether he would "ever go out looking for excitement," clarifying that excitement meant robbing

houses. The trial court, however, sustained the prosecutor's objection to this line of questioning as an improper attack on J.Y.'s credibility. This ruling precluded defense counsel from questioning J.Y. about allegations that he "would brag about breaking into drug dealers [sic] houses and stealing their guns."

In any case, the prosecutor presented undisputed evidence that, in the days following the shooting, Rogers: laundered the coat he had been wearing; power-washed his truck; gave away a gun smelling of bleach that was of the same type as the one used to kill Soward; and pawned Soward's PlayStation gaming system, which Soward had left at Rogers's apartment after the party. A friend of Rogers's also testified that, the day after the murder, Rogers told him it had happened in a manner consistent with J.Y.'s story, but later asked him to tell police that Soward had been picked up from the party by someone in a red truck while Rogers was taking other guests home.

The trial court also admitted an inculpatory statement Rogers gave to police on January 24, 2003, during a custodial interrogation. Defense counsel had moved to suppress the confession under *Edwards v. Arizona*, 451 U.S. 477 (1981), arguing that police had impermissibly continued to question Rogers after he asked to have counsel present. During the suppression hearing, one of the interrogating officers testified that Rogers had never explicitly requested counsel, though he did say he would like to talk to his father and "my dad would want me to have a lawyer here." The officer also recounted an exchange that occurred before Rogers composed the written confession at issue. At that point, Rogers asked "I can't write this with a lawyer or anybody," a detective answered "you can write it with a lawyer, but the lawyer wasn't there," and Rogers responded "well I'm just

asking." Based upon this evidence, the trial court concluded that Rogers had not invoked his right to counsel and denied the motion to suppress.

After the jury returned a guilty verdict, the trial court sentenced Rogers to life in prison, with a possibility of parole in twenty years, on the aggravated murder conviction and five years in prison, to be served consecutively, for tampering with evidence. On direct appeal, Rogers asserted several challenges to his conviction and sentence, including claims that the trial court erred by limiting J.Y.'s cross-examination and by declining to suppress Rogers's confession. The Ohio Court of Appeals rejected both arguments, ultimately affirmed Rogers's conviction, but vacated his sentence due to a violation of state law. *State v. Rogers*, No. CA2004-06-014, 2005 WL 3455126 (Ohio Ct. App. Dec. 19, 2005). Rogers attempted to appeal to the Ohio Supreme Court, but it declined to exercise jurisdiction. The trial court, on remand, resentenced Rogers on July 24, 2006. It imposed the same sentence for aggravated murder, but it reduced the sentence for tampering with evidence to only three years, still to be served consecutively. The Ohio Court of Appeals affirmed on July 23, 2007, and the Ohio Supreme Court again declined jurisdiction on December 26, 2007.

On March 24, 2009, Rogers filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio. Among the grounds for relief presented were claims that the trial court: (1) violated his right to confront adverse witnesses by curtailing J.Y.'s cross-examination; and (2) violated his right to counsel during a police interrogation by admitting his confession. The petition was referred to a magistrate judge, who issued a report and recommendation denying habeas relief. *Rogers v. Kerns*, No. 2:09-cv-00243, 2010 WL 5579808 (S.D. Ohio Oct. 13, 2010). The district court adopted the report and recommendation over Rogers's

-4-

objections, *Rogers v. Kerns*, No. 2:09-CV-243, 2011 WL 124273 (S.D. Ohio Jan. 14, 2011), and

later issued a certificate of appealability on the cross-examination and confession issues.

**II.**

"In a habeas case, this court reviews the district court's legal conclusions *de novo* and its

factual determinations for clear error." *McKinney v. Ludwick*, 649 F.3d 484, 487 (6th Cir. 2011)

(citing *Lovell v. Duffey*, 629 F.3d 587, 593–94 (6th Cir. 2011)), *cert. denied*, 132 S. Ct. 1559 (2012).

Under AEDPA, an application for habeas relief will not be granted unless the state court's

adjudication of the petitioner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is contrary to clearly established federal law "if the state court arrives

at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state

court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable

facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An unreasonable application of clearly

established federal law occurs when a state-court decision "correctly identifies the governing legal

rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08. For the

purposes of a § 2254(d) inquiry, clearly established federal law is "the governing legal principle or

principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer*

*v. Andrade*, 538 U.S. 63, 71–72 (2003). Any factual determinations made by the state court are presumed correct and can be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

AEDPA imposes a "difficult to meet," *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011), "highly deferential," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotation marks omitted), standard for granting habeas relief. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. That application must also be "objectively unreasonable." *Id.* at 409. In other words, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* A writ will issue only upon a showing that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

## III.

The first issue Rogers raises on appeal involves the trial court's ruling that defense counsel could not cross-examine J.Y. regarding his alleged history of breaking into houses and stealing guns. The Ohio Court of Appeals determined that this decision was not an abuse of discretion under state evidence rules, reasoning that the evidence was properly excluded as impermissible "[e]vidence of

other crimes, wrongs, or acts" used "to prove the character of a person in order to show action in conformity therewith." Ohio R. Evid. 404(B). Although Rogers asserted that the evidence "demonstrates that J.Y. had a preparation and plan to steal [Rogers's] gun, as well as knowledge to carry out the plan," *Rogers*, 2005 WL 3455126, at *2 (internal quotation marks omitted), and it was therefore "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," Ohio R. Evid. 404(B), the court of appeals found that "[Rogers's] contention that J.Y. planned to, and in fact did steal his gun, is unsupported by any evidence in the record" and the allegation that he habitually robbed other homes "was not offered for a permitted 'other purpose,' but rather only to discredit J.Y.'s character," *Rogers*, 2005 WL 3455126, at *2.

Rogers also argued to the court of appeals that the proffered evidence "was relevant to establish J.Y.'s propensity for truthfulness" and should have been allowed for impeachment purposes. *Id.* The court of appeals again disagreed, concluding he had not met the "requirement of a 'high degree of probative value of instances of prior conduct as to truthfulness or untruthfulness.'" *Id.* (quoting *State v. Miller*, No. 2004-T-0082, 2005 WL 2416539, at *5 (Ohio Ct. App. Sept. 30, 2005)); *see also* Ohio R. Evid. 608(B) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness . . . may . . . in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness . . . ."). Noting that Rogers "wished to cross-examine [J.Y.] about unsubstantiated allegations that he had stolen weapons," the court of appeals held that the trial court had acted within

its discretion given "the tenuous nature" of the link between this evidence and J.Y.'s character for truthfulness. *Rogers*, 2005 WL 3455126, at *3.

In his habeas petition, Rogers avers that this limitation of his cross-examination of J.Y. violates his confrontation rights under the Sixth and Fourteenth Amendments. Although the Ohio Court of Appeals did not discuss Rogers's constitutional argument when denying his claim on direct appeal, our review still proceeds under the deferential standard of § 2254(d). *See Harrington*, 131 S. Ct. at 784 ("[A] state court need not cite or even be aware of our cases under § 2254(d). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." (citation omitted)); *Harris v. Stovall*, 212 F.3d 940, 943 & n.1 (6th Cir. 2000) ("Where a state court decides a constitutional issue by form order or without extended discussion, a habeas court should then focus on the result of the state court's decision, applying the [AEDPA standard].").

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. A primary interest secured by this constitutional protection is the right to effectively cross-examine adverse witnesses, including through "the exposure of a witness' motivation in testifying." *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974) (citing *Greene v. McElroy*, 360 U.S. 474, 496 (1959)). Thus, in *Davis v. Alaska*, the Supreme Court found a violation of Davis's confrontation rights when, during his trial for burglary, he was precluded from revealing to the jury that a key prosecution witness was on probation for a juvenile delinquency adjudication for burglary. *Id.* at 315–18. Recognizing that defense counsel sought to use this information "to show the existence of possible bias and prejudice" of the witness, *id.* at 317,

based on "an inference of undue pressure because of [the witness's] vulnerable status as a probationer, as well as of [the witness's] possible concern that he might be a suspect in the investigation," *id.* at 318 (citation omitted), the Supreme Court concluded that "the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness's] testimony," *id.* at 317.

The Supreme Court revisited this issue in *Delaware v. Van Arsdall*, 475 U.S. 673 (1986). In reaffirming the principles announced in *Davis v. Alaska*, the Supreme Court also rejected the notion that "the Confrontation Cause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." *Id.* at 679. While the trial court in *Van Arsdall* violated the Confrontation Clause by prohibiting *all* inquiry into the possibility that a prosecution witness was biased by the state's dismissal of his pending criminal charge, the Supreme Court held that trial judges still "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.*

The Ohio Court of Appeals decision upholding the trial court's limitation on J.Y.'s cross-examination does not reflect an unreasonable application of the Supreme Court's Confrontation Clause jurisprudence. The line of questioning defense counsel sought to pursue concerned unsubstantiated allegations that J.Y. "would brag about breaking into drug dealers [sic] houses and stealing their guns." This simply cannot be considered an "otherwise appropriate cross-examination

designed to show a prototypical form of bias," *Van Arsdall*, 475 U.S. at 680, the preclusion of which gives rise to a Confrontation Clause violation.

First, even if J.Y. was prepared to admit a history of thievery and a familiarity with guns, this would not be probative of any bias against Rogers, or any motive to testify untruthfully. Instead, as Rogers argues at length, J.Y.'s potential prejudice stems from his involvement in the shooting and the possibility that he had a nefarious role in the crime—topics that were fully explored in defense counsel's otherwise extensive cross-examination. So, the proposed inquiry, if relevant at all, would bear only upon J.Y.'s general character. It is questionable whether *Davis v. Alaska* and *Van Arsdall* even apply to such general attacks on a witness's credibility, or whether they ascribe constitutional protection only to specific attacks "directed toward revealing possible biases, prejudices, or ulterior motives of the witness." *Davis v. Alaska*, 415 U.S. at 316; *see id.* at 321 (Stewart, J., concurring) ("[T]he Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions."); *Boggs v. Collins*, 226 F.3d 728, 737 (6th Cir. 2000) ("Courts after *Davis* [*v. Alaska*] and *Van Arsdall* have adhered to the distinction drawn . . . by Justice Stewart in his concurrence—that cross-examination as to bias, motive or prejudice is constitutionally protected, but cross-examination as to general credibility is not."). *But see Vasquez v. Jones*, 496 F.3d 564, 572 (6th Cir. 2007) ("Though the particular facts of *Davis* [*v. Alaska*] and *Van Arsdall* implicated only bias, the holdings of those cases clearly apply to both bias and credibility." (footnote omitted)).

Second, even assuming that the trial court's evidentiary ruling implicated Rogers's confrontation rights, he cannot show that his desired cross-examination was "otherwise appropriate." *See Van Arsdall*, 475 U.S. at 680. In fact, the Ohio Court of Appeals confirmed that the proposed questions were impermissible under the Ohio Rules of Evidence, as they attempted to elicit improper character evidence of prior bad acts that was insufficiently probative of J.Y.'s truthfulness or untruthfulness. *Rogers*, 2005 WL 3455126, at *2–*3; *see also* Ohio R. Evid. 404(B), 608(B). Rogers contends that, because J.Y. had a strong motivation to implicate him in the shooting, he should be able to conduct a wholesale inquiry into J.Y.'s background as a "violent thief." (Appellant Br. 21.) This is directly contrary to *Van Arsdall's* proscription that "'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" 475 U.S. at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)). The trial court's exercise of its discretion under the state evidence rules to preclude defense counsel's inquiries was the type of reasonable limitation on cross-examination contemplated in *Van Arsdall*. We defer to the Ohio Court of Appeals' denial of Rogers's Confrontation Clause claim as a reasonable application of clearly established federal law.

## IV.

Rogers also maintains that he is entitled to habeas relief because the police obtained his confession by continuing to interrogate him after he invoked his right to counsel, in derogation of *Edwards*. The Ohio Court of Appeals rejected this claim. It found that "[s]everal times during the course of the interrogation [Rogers] expressed a desire to speak with his father, but only once, when

he was about to write his confession, did he ask for an attorney, inquiring if he could 'write this with a lawyer.'" *Rogers*, 2005 WL 3455126, at *4. Relying on the Supreme Court's decision in *Davis v. United States*, 512 U.S. 452 (1994), the court of appeals concluded that Rogers's question was not a "formal, unequivocal request for an attorney such that it mandated the cessation of all further interrogation," as "[s]tatements less ambiguous than [Rogers's] have been found to be too ambiguous to require that questioning cease." *Rogers*, 2005 WL 3455126, at *4 (citing *Davis v. United States*, 512 U.S. at 455 ("Maybe I should talk to a lawyer."); *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (considering statement "[i]t would be nice" to have an attorney)).

Since the watershed decision in *Miranda*, a criminal suspect has enjoyed the right to the assistance of counsel during a custodial interrogation as a safeguard of his Fifth Amendment privilege against self-incrimination. One consequence of this right is that, if an individual under police questioning "states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. at 474. In *Edwards*, the Supreme Court held that, once invoked, the *Miranda* right to counsel cannot be deemed waived simply upon a showing that an accused "responded to further police-initiated custodial interrogation." 451 U.S. at 484. Rather, when an accused has "expressed his desire to deal with the police only through counsel," he cannot be "subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484–85.

In order for the *Edwards* rule to apply, however, an individual must, "at a minimum, [make] some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *McNeil v. Wisconsin*, 501 U.S.

-12-

171, 178 (1991) (emphasis omitted).  As the Supreme Court clarified in *Davis v. United States*, "a reference to an attorney that is ambiguous or equivocal" does not qualify as such a statement.  512 U.S. at 459.  A suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney," otherwise "*Edwards* does not require that the officers stop questioning the suspect." *Id.*  Whether or not a suspect has actually invoked his right to counsel during an interrogation is an objective inquiry.  *Id.* at 458–59.

The Ohio Court of Appeals did not unreasonably apply this precedent in denying Rogers relief under *Edwards*.  As discussed in that court, the only time during the interrogation that Rogers brought up his right to counsel after signing his *Miranda* waiver was immediately before he confessed, when he inquired "I can't write this with a lawyer or anybody[?]"  This was sufficiently equivocal to lead "a reasonable officer in light of the circumstances [to understand] only that the suspect *might* be invoking the right to counsel," *Davis v. United States*, 512 U.S. at 459, especially followed, as it was, by Rogers's assurance of "well I'm just asking."  *See Obershaw v. Lanman*, 453 F.3d 56, 64–65 (1st Cir. 2006) (finding no unreasonable application of *Edwards* or *Davis v. United States* in state court's determination that suspect did not unambiguously request counsel when, after being asked to show police where he had disposed of his murder victim's body, suspect asked "[c]an I talk to a lawyer first?").

Rogers also contends, as he did below, that the officers should have interpreted his requests to speak with his father as requests for counsel, because he was only nineteen years old and his prior statements had conveyed his feeling that "the link to a lawyer was his father."  (Appellant Br. 30;

*see also* Pretrial Tr. 40 (recounting Rogers's statement "my dad would want me to have a lawyer here").)  Because "[t]he Supreme Court has not held that the request to speak to a parent or grandparent is tantamount to a request for counsel," *Smith v. Scribner*, 384 F. App'x 672, 673 (9th Cir. 2010), Rogers must show that the Ohio Court of Appeals unreasonably refused to extend *Edwards* and *Davis v. United States* to this new context, *see Williams*, 529 U.S. at 407.  This is a burden that Rogers cannot overcome.  *Cf. Fare v. Michael C.*, 442 U.S. 707, 719 (1979) ("The *per se* aspect of *Miranda* was . . . based on the unique role the lawyer plays in the adversary system of criminal justice in this country."); *United States ex rel. Riley v. Franzen*, 653 F.2d 1153, 1159 (7th Cir. 1981) (denying habeas relief in pre-AEDPA and pre-*Davis v. United States* case after determining that sixteen-year-old's request for his father was not functional equivalent of request for counsel).

Under the circumstances of this case, holding that the interrogating officers should have intuited Rogers to mean "lawyer" when he said "father" would sanction exactly the type of guessing game rejected by *Davis v. United States* in favor of the "bright line" rule that "questioning must cease if the suspect asks for a lawyer."  512 U.S. at 461; *see also id.* ("[I]f we were to require questioning to cease if a suspect makes a statement that *might* be a request for an attorney, . . . [p]olice officers would be forced to make difficult judgment calls about whether the suspect in fact wants a lawyer even though he has not said so, with the threat of suppression if they guess wrong."); *cf. McNeil*, 501 U.S. at 178 ("[T]he *likelihood* that a suspect would wish counsel to be present is not the test for applicability of *Edwards*.").  The Ohio Court of Appeals declined

Case No. 11-3152
*Rogers v. Kerns*

Rogers's invitation to do just that, and we cannot consider that decision an unreasonable application of clearly established federal law.

**V.**

We **AFFIRM** the judgment of the district court dismissing the petition for a writ of habeas corpus.