RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0243p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

SCOTT DAVID PERREAULT,

> *Petitioner-Appellant,*

*v.*

No. 16-1213

WILLIE SMITH, Warden,

> *Respondent-Appellee.*

─────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:14-cv-11022—Marianne O. Battani, District Judge.

Argued:  October 3, 2017

Decided and Filed:  October 27, 2017

Before:  CLAY, ROGERS, and SUTTON, Circuit Judges.

─────────────

## COUNSEL

─────────────

**ARGUED:**  Edward F. Roche, ROPES & GRAY LLP, Washington, D.C., for Appellant.
Andrea M. Christensen-Brown, OFFICE OF THE MICHIGAN ATTORNEY GENERAL,
Lansing, Michigan, for Appellee.  **ON BRIEF:**  Edward F. Roche, Jonathan S. Klarfeld, ROPES
& GRAY LLP, Washington, D.C., Alexandra L. Roth, ROPES & GRAY LLP, New York, New
York, Justin G. Florence, ROPES & GRAY LLP, Boston, Massachusetts, for Appellant.  Andrea
M. Christensen-Brown, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing,
Michigan, for Appellee.

─────────────

## OPINION

─────────────

    SUTTON, Circuit Judge.   In 2009, a Michigan jury convicted Scott Perreault of
murdering his four-month-old daughter.  He filed a habeas petition in federal court claiming that

police failed to honor his request for counsel and that he received ineffective assistance of counsel at trial. The district court denied his petition. Because the state courts did not unreasonably apply the Supreme Court's teachings in either area, we affirm.

I.

Perreault lived with his fiancée Jamie Newman and their four-month-old daughter Jenna Perreault. On the morning of September 2, 2008, Newman left Jenna at home with Perreault. At about 10:00 a.m., Perreault called 911 to report that Jenna had been injured. Police and paramedics arrived on the scene and found that Jenna had suffered a blunt-force trauma to the head. They rushed her to the hospital, where she died from her injuries two days later.

Perreault was indicted for first-degree felony murder and two counts of felony child abuse. At trial, he claimed that he had dropped Jenna while holding her in the kitchen, that he had fallen on top of her, and that she may have hit her head on an object in the kitchen as the two fell together. The State disputed this account, relying in part on the testimony of the emergency room doctor who treated Jenna, Dr. Matthew Deibel. Dr. Deibel testified that Jenna's injuries could have been caused only by a narrow range of high-impact events, such as a high-speed car accident, a fall from several stories, or "a baseball bat to the head." Based on this and other evidence, the State argued that Jenna's injuries were caused by her head striking a blunt object at a high speed. The jury found Perreault guilty of first-degree child abuse and first-degree felony murder. The court sentenced him to life in prison.

Perreault appealed to the Michigan Court of Appeals. His counsel argued that there was insufficient evidence to convict, and Perreault filed a supplemental brief on his own raising twenty-two additional claims, including claims that his statements to police should have been suppressed. The Court of Appeals affirmed. *People v. Perreault*, No. 293324, 2011 WL 1901994 (Mich. Ct. App. May 19, 2011). Mr. Perreault filed an application for leave to appeal the Court of Appeals decision to the Michigan Supreme Court, raising the same claims he had previously raised. *People v. Perreault*, 805 N.W.2d 191 (Mich. 2011). The Michigan Supreme Court denied the application because it was not "persuaded that the questions presented should be reviewed by this Court." *Id.*

Perreault returned to the trial court and filed a motion for relief from judgment, arguing for the first time that he had received ineffective assistance of trial counsel.  The trial court denied his claims, and the Court of Appeals denied leave to appeal.  The Michigan Supreme Court also denied leave to appeal.  *People v. Perreault*, 845 N.W.2d 122 (Mich. 2014).

Perreault filed a habeas petition in federal court.  The district court denied relief but granted a certificate of appealability on two questions:  (1) Whether Perreault's statement during the police interrogation, "Well, then let's call the lawyer then 'cause I gave what I could," constituted an unambiguous invocation of the right to counsel that required the police to stop questioning him? and (2) Whether Perreault's trial counsel was ineffective because he failed to challenge the state expert's testimony about the cause of Jenna's injuries?

## II.

Under the Antiterrorism and Effective Death Penalty Act of 1996, federal courts may override state criminal convictions only if the state court unreasonably applied clearly established Supreme Court precedent or the conviction turned on unreasonable findings of fact. 28 U.S.C. § 2254(d).  As for legal conclusions, the state court decision must be objectively unreasonable, not just wrong.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

*Right to Counsel*.  Perreault argues that police failed to honor his right to counsel after he requested an attorney during the interview.  A suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning.  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  If the suspect invokes that right, police must stop questioning him until his attorney arrives or the suspect reinitiates discussion.  *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981).  In determining whether a suspect has invoked his right to counsel, we apply an objective standard, asking whether a reasonable police officer would have understood the suspect to be asking for an attorney.  *Davis v. United States*, 512 U.S. 452, 458–59 (1994).  The request must be unequivocal.  *Id.* at 459.  For instance, in *Edwards*, the Supreme Court found that the defendant's statement, "I want an attorney before making a deal," was an unambiguous request for counsel.  *Edwards*, 451 U.S. at 479.  Yet, in *Davis*, the Supreme

Court found the defendant's statement, "Maybe I should talk to a lawyer," was not an unambiguous request for counsel. *Davis*, 512 U.S. at 462.

During Perreault's police interview, the examining officer said that his story was inconsistent, calling it "jacked up." *Perreault*, 2011 WL 1901994, at *9. Perreault responded, "Well, then let's call the lawyer then 'cause I gave what I could." *Id.* The officer noted, "That's fine," before Perreault added, "There's no reason for anybody to take me to jail." *Id.* The officer responded, "You getting a lawyer's not going to prevent you from going to jail," after which Perreault continued talking to the officer. *Id.*

The Michigan Court of Appeals found that Perreault did not unambiguously ask for an attorney. *Id.* In its view, his statements were "akin to negotiations." *Id.*

That is a plausible reading of Perreault's statement. A reasonable police officer could interpret "Well, then let's call the lawyer then 'cause I gave what I could" to mean something like "That's all I got; take it or leave it." Negotiation literature has a name for this tactic: threatening to resort to the "best alternative to a negotiated agreement," and it's recognized as one of the most commonly employed bargaining strategies. *See* Jay A. Hewlin, *The Most Overused Negotiating Tactic Is Threatening to Walk Away*, Harv. Bus. Rev. (Sept. 18, 2017), https://hbr.org/2017/09/the-most-overused-negotiating-tactic-is-threatening-to-walk-away.

One sees something similar at car dealerships. When a would-be car purchaser threatens to walk away, that's not because he wants to leave; it's because he wants the salesman to lower the price or otherwise sweeten the deal. When a child threatens to call Mom if his older sister refuses to return a favorite toy, the goal is not to call Mom. The goal is to convince the older sister to return the toy or at least to give it back at some point. The threat works only if Mom is never called. So too of the threat: "Well, then, I will see you in court!" No one takes that as a request for litigation.

Consider federal regulatory schemes, which commonly allow private parties to negotiate deals with one another in the shadow of binding arbitration should they fail to reach agreement. *See, e.g.*, FIFRA, 7 U.S.C. § 136a; *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568,

573–74 (1985).  Here too, we wouldn't be surprised to hear, mid-negotiation, "Well, then let's call the arbitrator then 'cause I gave what I could."

The point of these examples is not to show that Perreault's statement could only be interpreted as a negotiating tactic.  They merely show that the state court's interpretation of the statement was a reasonable one.

Perreault claims that several circuit precedents prove that his statement amounted to an invocation of counsel.  Most of the cases, however, did not find an unequivocal invocation. *Compare Rogers v. Kerns*, 485 F. App'x 24, 31 (6th Cir. 2012) ("I can't write this with a lawyer or anybody[?]" was insufficient),  *United States v. Delaney*, 443 F. App'x 122, 130 (6th Cir. 2011) ("I think I should talk to a lawyer, what do you think?" was insufficient), *Ledbetter v. Edwards*, 35 F.3d 1062, 1069–70 (6th Cir. 1994) ("it would be nice" to have an attorney was insufficient), *and Boles v. Foltz*, 816 F.2d 1132, 1135 (6th Cir. 1987) (a request for an attorney at a future preliminary hearing was insufficient), *with Kyger v. Carlton*, 146 F.3d 374, 376, 379 (6th Cir. 1998) ("I'd just as soon have an attorney [']cause, you know—ya'll say there's been a shooting involved and that's a serious charge" was sufficient).

This exercise misunderstands our role at any rate.  Circuit precedents do not constitute "clearly established Federal law, as determined by the Supreme Court" and cannot provide the basis for relief under AEDPA. *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012).

Perreault adds that the Michigan Court of Appeals relied on his statements made after requesting counsel in order to determine that the earlier statement was ambiguous, in violation of *Smith v. Illinois*, 469 U.S. 91, 100 (1984).  But that's not what happened.  While the court recognized that Perreault continued to speak to officers, it did so after noting that Perreault "never clearly requested to call an attorney or have an attorney present" and that his statements were "akin to negotiations." *Perreault*, 2011 WL 1901994, at *9.  Besides, habeas review requires us to consider what arguments or theories supported or *could have supported* the state court's decision. *See Harrington*, 562 U.S. at 102; *Davis v. Carpenter*, 798 F.3d 468, 475 (6th Cir. 2015).  And we have already explained how Perreault's statement did not rise to an unequivocal request for counsel.

Perreault claims that the district court erred in treating the state court's no-invocation ruling as a factual finding entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). The distinction makes little difference here given the deference AEDPA demands for conclusions of law *and* fact. Still, we agree with Perreault that this case turns on the legal effect of his statements rather than a factual dispute over what they were. The question is whether the state court unreasonably applied clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). It did not.

Perreault asks us to remand his case to the district court to obtain a transcript of the police interview introduced in the state court proceedings. But the Michigan Court of Appeals opinion already recounts the relevant portion of the police interview and provides plenty of context to confirm the reasonableness of its conclusion. *See Perreault*, 2011 WL 1901994, at *9. In the absence of any inaccuracies in that account—and Perreault points to none—we see no reason to take that step. *See Clark v. Waller*, 490 F.3d 551, 556 (6th Cir. 2007).

*Ineffective Assistance of Counsel*. Perreault separately argues that his trial counsel provided ineffective assistance when he failed to cross-examine Dr. Deibel adequately about the scientific basis for his testimony. Success on this claim is not easy. Perreault must prove that his counsel's performance was objectively deficient and that the deficiency prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). It gets worse. On top of that, he must satisfy the *Strickland* requirements in the context of AEDPA's deferential standard of review. We ask, then, not whether counsel's actions were reasonable but whether there is any reasonable argument that counsel satisfied *Strickland*. *Harrington*, 562 U.S. at 105.

Although the state court rejected the *Strickland* claim through a procedural-default ruling, the court addressed the alleged deficiency on the merits as part of its ruling, meaning AEDPA deference applies to the *Strickland* claim. *See Brooks v. Bagley*, 513 F.3d 618, 624–25 (6th Cir. 2008). The state court found that trial counsel's line of questioning sufficed to constitute effective assistance. That was not an unreasonable application of Supreme Court precedent. And because trial counsel's performance was not deficient, appellate counsel's decision not to raise an ineffective assistance of counsel claim does not constitute the cause and prejudice

required to overcome procedural default.  *See Coleman v. Thompson*, 501 U.S. 722, 752–54 (1991).

Defense counsel, to be sure, did not cross-examine Dr. Deibel on the medical basis for his opinion that Jenna's injuries could not have been caused by a fall even if Perreault landed on top of her.  But this was a reasonable strategic decision.  Another prosecution witness, Dr. Kanu Virani, the forensic pathologist who performed Jenna's autopsy, testified that it was possible for her injury to have been caused by a fall followed by a 150-pound body landing on top of her, although he did not think that was the case here.  In the face of conflicting prosecution witness testimony, it is within the wide range of reasonable professional assistance to leave well enough alone and avoid the risk of bolstering adverse testimony.

Dr. Virani, it is true, testified after Dr. Deibel at trial.  But Dr. Virani acknowledged at the preliminary examination that Jenna's injuries could have been caused by a fall onto a hard surface, if an adult fell on top of her.  Defense counsel thus had good reason to know that Dr. Virani would provide conflicting testimony later in the trial.  But even if that was not the case, his performance did not violate the Sixth Amendment.  *Strickland* requires that counsel exercise "such skill and knowledge as will render the trial a reliable adversarial testing process" considering all of the circumstances.  *Strickland*, 466 U.S. at 688.  In other words, we conduct a contextual inquiry in which counsel's individual decisions are viewed in light of the entire trial and not in a vacuum.  Regardless of what Perreault's trial counsel subjectively knew or didn't know at a given moment, it makes little sense to evaluate the deficiency of his cross-examination without considering what followed.

Hoping for a different conclusion, Perreault invokes *Higgins v. Renico*, 470 F.3d 624 (6th Cir. 2006) and *Smith v. Jenkins*, 609 F. App'x 285 (6th Cir. 2015).  These cases do not constitute clearly established Supreme Court precedent.  Nor do they help Perreault even on their own terms.  In *Higgins*, we found defense counsel deficient for failing to cross-examine the key eyewitness at all.  *See Higgins*, 470 F.3d at 633.  Here, defense counsel questioned Dr. Deibel about Jenna's treatment in the emergency room and his qualifications relative to a forensic pathologist, just not the scientific basis for his opinions.

In *Smith*, defense counsel fell short of reasonable professional standards for failing to "conduct *any* investigation" into the state of the victim's health. *See Smith*, 609 F. App'x at 292. But we noted that a competent defense counsel may well conduct such an investigation and decide not to present expert testimony at trial. *See id.* at 292–93. *Smith* turned principally on defense counsel's lack of diligence in preparation for trial, not his strategic decision making at trial. In this case, no evidence supports the allegation that defense counsel failed to conduct a reasonable investigation into alternative causes for Jenna's injury. *See Burt v. Titlow*, 134 S. Ct. 10, 17 (2013).

Perreault ends with a different tack. He asks us to remand his *Strickland* claim to the district court to conduct an evidentiary hearing and review his claim again. But in reviewing whether a state court unreasonably applied Supreme Court precedent, a habeas court generally must take the state court record as it finds it. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Perreault does not allege that his claim relies on a new rule of constitutional law or a factual predicate that could not have been previously discovered. 28 U.S.C. § 2254(e)(2). That leaves us with no ground to supplement that record or to substitute the state court's judgment with our own.

For these reasons, we affirm.