NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0663n.06

No. 19-1434

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ALAN TROWBRIDGE,

    Petitioner-Appellant,

v.

JEFFREY WOODS, Warden,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)

**FILED**
Nov 19, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

**Before: SUHRHEINRICH, GIBBONS, and BUSH, Circuit Judges.**

JULIA SMITH GIBBONS, Circuit Judge. Defendant Alan Trowbridge appeals the district court's denial of his petition for writ of habeas corpus in which he alleges ineffective assistance of counsel during proceedings in a Michigan state trial court. We affirm the district court's denial of the writ.

**I.**

On August 12, 2010, Petitioner Alan Trowbridge was convicted of three counts of first degree criminal sexual conduct ("CSC") for raping his young daughter. Before trial, the prosecution made three plea offers to Trowbridge. Trowbridge rejected the first offer to plead guilty to one count of CSC I. At the final pretrial conference on July 30, 2010, Trowbridge rejected a second plea offer, which would have required him to plead guilty to two counts of third-degree CSC with a habitual enhancement. This second plea offer carried a maximum sentence of 22 ½ years of imprisonment. At the time, Trowbridge was 29 years old. Finally, on the first day of the trial, the government made a third plea offer that would have required Trowbridge to plead no

contest to three counts of third-degree CSC; this offer carried a maximum sentence of 15 years imprisonment. Trowbridge attempted to accept the no contest plea deal, but the trial court rejected the offer because it had previously told Trowbridge that it would not entertain any further plea agreements after Trowbridge rejected the second deal offered at the final pretrial conference. Trowbridge proceeded to trial and was found guilty.

After trial, it was discovered that Trowbridge faced a mandatory sentence of life in prison without the possibility of parole because he had a prior conviction of first-degree CSC. The prosecution, defense counsel, and even the trial court were all unaware that this mandatory sentence applied until after the trial. Despite this serious oversight, the trial court followed the mandatory rule and sentenced Trowbridge to life imprisonment without the possibility of parole.

On appeal, Trowbridge argued that his trial counsel provided ineffective assistance by failing to inform him before trial that he was facing a mandatory life sentence if convicted. The Michigan Court of Appeals remanded the case for an evidentiary hearing on Trowbridge's ineffective assistance claim.

At the evidentiary hearing, Trowbridge's trial counsel, Daniel Hartman, testified that in his opinion Trowbridge would have accepted the second plea offer that carried a maximum sentence of 22 ½ years if Trowbridge had been aware that he faced a mandatory sentence of life without the possibility of parole.[1] Hartman said that the defense and prosecution "were very close to resolving th[e] case" and were actively exchanging plea offers up until trial. DE 10-11, Hr'g Tr., Page ID 1253. Hartman also testified, however, that Trowbridge knew that if he was found guilty at trial the judge could set the term of imprisonment to exceed his natural life, *id.* at Page ID 1298, and

---

[1]    The court focused on whether Trowbridge would have accepted the second plea offer because even if he had been properly advised he would not have been able to accept the third plea offer on the first day of trial based on the trial court's rules.

2

that his chance of winning at trial was "very slim," *id.* at Page ID 1250. Furthermore, Hartman told Trowbridge that CSC offenders rarely received parole and that it was likely he would serve most, if not all, of his term of imprisonment. Trowbridge did not testify or submit an affidavit at the evidentiary hearing.[2]

The government conceded that Hartman's performance was deficient, and the court did not question that it was "objectively unreasonable in lights of prevailing professional norms." DE 10-12, Tr. of Decision re Evidentiary Hr'g, Page ID 1334−35. However, the trial court found that Trowbridge had not been prejudiced by the deficient performance. Central to this finding was the court's determination that it was "almost certain that [Trowbridge] would have made the same decision had he known about the mandatory life sentence." The trial court reasoned that when Trowbridge knew that he was likely facing a minimum sentence of close to thirty years of imprisonment and that his sentence would likely have exceeded his natural life. Thus, the trial court concluded that it was "reasonably probable" that Trowbridge's choice to reject the second plea offer "would not have been different had he been properly advised." *Id.* at Page ID 1338.

The Michigan Court of Appeals affirmed, finding that based on the evidence presented at the evidentiary hearing, the court did not have "the definite and firm conviction that the trial court made a mistake when it concluded that [Trowbridge] had not established a reasonable probability that he would have accepted the prosecution's final pretrial plea offer with proper advice regarding the mandatory sentence he faced if convicted at trial." *People v. Trowbridge*, No. 300460, 2012

---

[2] Trowbridge later submitted an affidavit to the Michigan Supreme Court, in which he stated, "[I]f I had been correctly advised regarding the penalty I faced, I would have accepted the prosecution's plea offers, and I would have done so in a timely manner. I would have made the necessary admissions of guilt on the record as required under the plea offers." DE 10-13, Affidavit, at Page ID 1346. The Michigan Supreme Court accepted Trowbridge's motion to expand the record to include the affidavit, but it was not part of the record before the Michigan Court of Appeals.

WL 4373407, at *4–5 (Mich. Ct. App. Sept. 25, 2012). The Supreme Court of Michigan declined to hear Trowbridge's appeal. *People v. Trowbridge*, 861 N.W.2d 624 (Mem.) (Mich. 2015).

On November 23, 2015, Trowbridge filed his petition in the United States District Court for the Western District of Michigan for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court held that the Michigan trial court had correctly applied the *Strickland* standard to Trowbridge's ineffective assistance of counsel claim and did not clearly err in finding that Trowbridge had failed to show a reasonable probability that he would have accepted the second plea offer had he been properly advised. The district court granted Trowbridge a certificate of appealability, and Trowbridge filed this timely appeal.

## II.

## A.

When reviewing a district court's grant or denial of a petition for a writ of habeas corpus, we review its factual findings for clear error and its legal conclusions de novo. *Loza v. Mitchell*, 766 F.3d 466, 473 (6th Cir. 2014). A state court's determination of factual issues "shall be presumed to be correct" unless the petitioner rebuts this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Additionally, "[b]oth the district court and this court are bound to apply the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Pinchon v. Myers*, 615 F.3d 631, 638 (6th Cir. 2010).

Under AEDPA, a federal court may grant habeas relief based on ineffective assistance of counsel if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1); *see also Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003) (holding that ineffective assistance of counsel claims are evaluated under § 2254(d)(1)). A state court's decision is an "unreasonable application" of clearly established

federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 407–08 (2000). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Objectively unreasonable is a higher standard than clear error. *See White v. Woodall*, 572 U.S. 415, 419 (2014). To demonstrate that the state court was objectively unreasonable, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 419–20 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

This court applies AEDPA deference to "the decision of 'the last state court to issue a reasoned opinion on the issue[s]' raised in [the] habeas petition." *Shimel v. Warren*, 838 F.3d 685, 696 (6th Cir. 2016) (first alteration in original) (quoting *Joseph v. Coyle*, 469 F.3d 441, 450 (6th Cir. 2006)); *see also Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[T]he federal court should 'look through' [an] unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."). When the Michigan Court of Appeals issued a detailed analysis of the merits and the Michigan Supreme Court summarily denied review, this court has consistently reviewed the Michigan Court of Appeals decision. *See, e.g.*, *Shimel*, 838 F.3d at 695, 696. Here, the Michigan Supreme Court denied Trowbridge's application for leave to appeal because it was "not persuaded that the question presented should be reviewed by" it. *Michigan v. Trowbridge*, 861 N.W.2d 624 (Mem) (Mich. 2015). This court has previously applied AEDPA deference to the Michigan Court of Appeals decision when the Michigan Supreme Court has used the same language, used here to

deny leave for appeal. *See Tackett v. Trierweiler*, 956 F.3d 358, 365, 374 (6th Cir. 2020) (applying AEDPA deference to the Michigan Court of Appeals decision after the Michigan Supreme Court denied review because it was not "persuaded that the questions presented should be reviewed by this Court"); *Perreault v. Smith*, 874 F.3d 516, 519–20 (6th Cir. 2017) (same). Thus, we will consider the Michigan Court of Appeals decision to be the last reasoned opinion issued by a state court and apply AEDPA deference to that court's decision.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Because the Michigan Court of Appeals was the last state court to issue a reasoned opinion, the record before this court is limited to the record that was before that court, meaning only the testimony from the evidentiary hearing. Trowbridge's affidavit, which was entered into the record after the Michigan Court of Appeal's decision, is not properly before this court to review.

**B.**

The Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984), provides the "clearly established Federal law" relevant to Trowbridge's claim of ineffective assistance of counsel. *See Williams*, 529 U.S. at 391. To prevail, Trowbridge must first "show that counsel's performance was deficient" by "an objective standard of reasonableness," meaning that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687–88. In this case, both parties admit that trial counsel's failure to advise Trowbridge that he was facing a mandatory sentence of life without the possibility of parole amounted to a deficient performance. "Second, the defendant must show that the deficient performance prejudiced the defense," meaning that Trowbridge "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

6

of the proceeding would have been different." *Id.* at 687, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[I]n the context of plea negotiations, to demonstrate prejudice, a petitioner must establish a reasonable probability that, but for counsel's unprofessional errors, the outcome of the plea process would have been different." *Byrd v. Skipper*, 940 F.3d 248, 258 (6th Cir. 2019) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). In a case like this where AEDPA applies, we must determine whether the state court unreasonably found that there was no reasonable probability that but for trial counsel's error, Trowbridge would have accepted the second plea offer.

When determining whether there was a reasonable probability that the defendant would have pleaded guilty, the court places "special weight" on the disparity "between penalties offered in a plea and penalties of a potential sentence." *United States v. Morris*, 470 F.3d 596, 602 (6th Cir. 2006). In *Morris*, the defendant rejected a plea offer of 36 to 72 months of imprisonment because he was erroneously advised that his guideline sentence range was 62 to 68 months of imprisonment. *Id.* at 598. The defendant's actual guideline range, however, was 101 to 111 months of imprisonment if he went to trial and was found guilty. *Id.* at 599. The court found that the disparity between a sentence of 62 to 68 months and a sentence of 101 to 111 months created a reasonable probability that the defendant would have accepted the plea offer had he been properly informed. *Id.* at 603; *see also Magana v. Hofbauer*, 263 F.3d 542, 552–53 (6th Cir. 2001) (finding prejudice when a defendant rejected a plea offer based on his counsel's erroneous advice that he faced a ten-year sentence when in actuality he faced a sentence of up to forty years); *United States v. Gordon*, 156 F.3d 376, 378, 381 (2d Cir. 1998) (finding prejudice where defendant rejected a plea offer of 84 months under the erroneous assumption that he faced a maximum sentence of 120 months imprisonment; in truth, the defendant's guideline sentence range was 262 to 327 months).

Here, based on a full review of the factual record, it was not objectively unreasonable for the Michigan Court of Appeals to find that there was no reasonable probability Trowbridge would have accepted a plea offer had he known he was facing a mandatory sentence of life without the possibility of parole. First, there is not a significant disparity between the sentence Trowbridge thought he was facing when he rejected the prosecution's second plea offer and the actual sentence he was facing. As the Michigan Court of Appeals described:

> First, defense counsel's testimony established that defendant knew his chances of success at trial were extremely small. Second, although defense counsel erroneously used the sentence guidelines to advise defendant regarding the potential sentence he faced, defendant was told that if convicted he likely would be sentenced to such a lengthy term of years that it would be tantamount to a life sentence. Given this advice, defendant still chose to reject a plea bargain that would have capped his maximum prison term at 22 ½ years.

*People v. Trowbridge*, 2012 WL 4373407, at \*4. Second, Trowbridge—who was 29 at the time— knew that if he was convicted it was unlikely that he would be paroled early. Put another way, Trowbridge knew when he rejected the government's plea offer on July 30 that he was facing a sentence close to if not exceeding his natural life and that he was unlikely to be released early on parole. Furthermore, the Michigan Court of Appeals reasoned that Trowbridge's assertions of his innocence at trial and his failure to present his own testimony at the evidentiary hearing suggested an unwillingness to plead guilty before trial.[3] Given the evidence before the Michigan Court of

---

[3] To be sure, a defendant's "'repeated declarations of innocence' alone [do not] preclude the possibility that the defendant would have entered a guilty plea if he had been aware of the consequences of proceeding to trial." *Sawaf v. United States*, 570 F. App'x 544, 549 (6th Cir. 2014) (quoting *Griffin v. United States*, 330 F.3d 733, 738 (6th Cir. 2003)); *see also United States v. Morris*, 470 F.3d 596, 603 (6th Cir. 2006). Our court, however, has at least on one recent occasion condoned weighing the defendant's assertions of innocence as one factor among many to be considered when undertaking a prejudice analysis. *See Johnson v. Genovese*, 924 F.3d 929, 939–40 (6th Cir. 2019) (approving of the state court's consideration of the petitioner's "equivocal testimony, his consistent assertions of innocence, and his attorney's credited statements"). Thus, it was not objectively unreasonable for the state court to consider Trowbridge's testimony at trial that he was innocent when determining whether he would have pled guilty. Furthermore, given the other evidence in the record, the Michigan Court of Appeals did not need to rely on Trowbridge's assertions of innocence to reach its conclusion.

Appeals, it is not objectively unreasonable for that court to conclude that Trowbridge would not have accepted a plea offer before trial even if he knew he was facing a sentence of life without the possibility of parole.

There is some evidence to the contrary, suggesting that Trowbridge would in fact have accepted a plea offer if he had been fully informed of the mandatory sentence he was facing. Most notably, Hartman testified that he believed that Trowbridge would have accepted the July 30 plea offer if Hartman had recommended it. The Michigan Court of Appeals, however, reasonably approved of the state trial court's decision to give this after-the-fact speculation by Hartman little weight. *See People v. Trowbridge*, 2012 WL 4373407, at \*4. Also, Hartman testified that the two sides were "very close to resolving this case," before trial, DE 10-11, Hr'g Tr., Page ID 1253, and that Trowbridge attempted to enter a no contest plea on the first day of trial. But Trowbridge's consent to a no contest plea rather than a guilty plea could be viewed as evidence that Trowbridge would only have accepted a plea offer if he did not have to plead guilty. Ultimately, the existence of some evidence in Trowbridge's favor does not mean that the Michigan Court of Appeals was objectively unreasonable to deny his ineffective assistance of counsel claim given the entirety of the record.

In sum, our task under AEDPA review is not to decide whether the state court was correct, or whether we would have decided the case differently. *See Lockyer*, 538 U.S. at 75−76. We must deny the writ unless the state court's decision was objectively unreasonable, meaning that there is no possibility for fairminded disagreement. *Woodall*, 572 U.S. at 419−20. In this case, the Michigan Court of Appeals gave a reasoned explanation for its finding that there was no reasonable probability that, but for the deficient performance of his trial counsel, Trowbridge would have pled guilty. Based on the record before that court, we cannot say that its decision was objectively

9

unreasonable.  Accordingly, Trowbridge has not met the high standard necessary to receive habeas

relief.

## III.

The district court's denial of a writ of habeas corpus is affirmed.